W. DOUGLAS SPRAGUE (Bar No. 202121)
Email: dsprague@cov.com
ETHAN FORREST (Bar No. 286109)
Email: eforrest@cov.com
ANNIE SHI (Bar No. 327381)
Email: ashi@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

DAVID BUCKNER (Fla. Bar No. 60550)
Email: david@bucknermiles.com
BUCKNER + MILES
3350 Mary Street
Miami, Florida 33133
Telephone: +1 (305) 964-8003
*pro hac vice to be filed*

Attorneys for Plaintiff
Airbnb, Inc.

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AIRBNB, INC., | Civil Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| NGD HOMESHARING, LLC, a Florida limited liability company, and HARVEY HERNANDEZ, an individual, | **JURY DEMAND** |
| Defendants. | |

Plaintiff, Airbnb, Inc. ("Airbnb"), brings this Complaint for monetary damages and other relief against Defendants NGD Homesharing, LLC ("NGD"), and Harvey Hernandez.  In support of its Complaint, Airbnb alleges as follows:

## INTRODUCTION

1.      A little more than one year ago, Airbnb—relying on representations and promises made by NGD and its CEO, Harvey Hernandez—invested approximately $11 million in NGD.  In sum, Airbnb was providing capital, expertise, and brand recognition to NGD and Hernandez, who were supposed to manage, operate, and market rental properties throughout the United States.  This investment was designed to create more homesharing accommodations for the Airbnb community, particularly in urban, multi-family buildings.  Airbnb recently learned, however, that during the parties' business relationship, NGD and Hernandez stole funds, made unauthorized loans to other Hernandez-controlled companies, fraudulently backdated documents, breached contracts, and then lied repeatedly in an attempt to cover their tracks.  As a result, Airbnb files this Complaint.

2.      Airbnb recently discovered that, unbeknownst to Airbnb, defendants misrepresented and concealed facts to induce Airbnb's investment.  Then, after the business relationship was established, defendants repeatedly violated the terms of the parties' agreements and otherwise acted in bad faith.  For example, defendants siphoned at least $1 million from the parties' joint business interests without authorization.  When confronted about this unauthorized diversion of funds, defendants responded with delay, misdirection, and false promises of repayment.  Furthermore, in their frantic efforts to conceal their duplicity, defendants eventually produced fraudulent and backdated documentation of an unauthorized "loan"—reflecting Hernandez as the signatory on behalf of both borrower and lender—as purported justification for diverting the funds.  The entire principal of and interest on this purported "loan" remains unpaid and is in default.

3.      In return for its investment of approximately $11 million, Airbnb negotiated for and received significant commitments and representations from NGD.  Among other things, NGD represented that the calculation of another investor's warrants for units in NGD would be on a class basis, not a fully diluted basis.  Months after defendants had obtained Airbnb's investment, however,

defendants admitted that they had orally promised the other investor that these warrants were exercisable for units calculated on a fully diluted basis, effectively altering the value of Airbnb's investment.

4.    Finally, NGD utterly failed to deliver on the core purpose of this partnership: creating more homesharing accommodations for the Airbnb community, particularly in urban, multi-family buildings.  Importantly, NGD committed to open at least seven real estate projects in 2019.  This commitment was so central to the parties' relationship that Airbnb could terminate the parties' Collaboration Agreement if NGD failed to open seven projects.  NGD failed to open a single project in 2019.  Furthermore, in connection with previous projects in development, NGD also repeatedly violated its agreement to incorporate Airbnb's input as to design, apparently sold units without Airbnb's requisite written approval, and misused Airbnb's name and trademarks.

5.    As a result, and as set forth below, Airbnb brings this action to terminate its relationship with defendants and to seek monetary recovery in excess of $11 million, plus fees and costs from having to prosecute this action.

## PARTIES

6.    Airbnb is a Delaware corporation with its principal place of business at 888 Brannan Street, San Francisco, California, 94103.

7.    NGD is a Florida limited liability company with its principal place of business at 14 NE 1st Avenue, Penthouse, Miami, Florida, 33132.

8.    Harvey Hernandez is an individual residing, on information and belief, in Miami, Florida.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the parties are diverse and Airbnb's claim exceeds $75,000, exclusive of interest and costs.

10.    NGD is subject to personal jurisdiction within the Northern District of California because NGD does business in California; because its acts, misrepresentations, and omissions occurred in and harmed Airbnb in California; and because under the Collaboration Agreement, NGD expressly consented to the exclusive jurisdiction of federal or state courts in San Francisco, California.

11.    Hernandez is subject to personal jurisdiction within the Northern District of California because he does business in California; because his acts, misrepresentations, and omissions occurred in

and harmed Airbnb in California; and because he is an alter ego of NGD.  Hernandez and NGD share

(a) such unity of interest and ownership that in reality no separate entities exist; and (b) failure to

disregard the separate identities would result in fraud or injustice.  Hernandez personally directed

NGD's activities giving rise to the claims in this Complaint.  Hernandez also purposefully availed

himself of business opportunities in California, visiting from time to time in connection with his and

NGD's business relationship with Airbnb.

12.     Venue is proper under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the

events and omissions giving rise to the claims in this Complaint occurred in the Northern District of

California, where Airbnb maintains its headquarters.

**INTRA-DISTRICT ASSIGNMENT**

13.     A substantial part of the events or omissions giving rise to the claims in this Complaint

occurred within San Francisco City and County.  Accordingly, this case is rightfully assigned to the San

Francisco division of this Court pursuant to Civil Local Rule 3-2, subsections (c) and (d).

**FACTS ENTITLING AIRBNB TO RELIEF**

**Airbnb's and NGD's Partnership and Contracts**

14.     Airbnb operates an online platform that enables people to list, explore, and book both

housing accommodations and experiences.  Airbnb is one of the world's largest marketplaces for unique,

authentic places to stay and things to do.  Through its proprietary online platform, Airbnb offers more

than 7 million accommodations and 40,000 handcrafted experiences, all powered by hosts.  Airbnb

allows people all over the world to open up their homes and to offer their time and expertise to others—

so that instead of travelling to stay in the usual international chain hotels or pay for readymade activity

packages, Airbnb's customers can stay where locals live and partake in one-of-a-kind experiences.

15.     NGD purports to manage, operate, and market real estate.  Hernandez is NGD's

co-founder, sole manager, and CEO.  According to NGD's 2019 Florida Limited Liability Company

Annual Report, NGD's principal place of business is 14 NE 1st Avenue, Penthouse, Miami, FL 33132.

NGD's registered agent is Hernandez, whose address is also 14 NE 1st Avenue, Penthouse, Miami, FL

33132.  Hernandez purports to own the largest interest in NGD.

16.     In 2016, Airbnb entered into an initial agreement with NGD to explore the possibility of developing residential homesharing-friendly properties in various cities.  The parties contemplated that these properties would be co-branded projects, the first of their kind.  After working together on pilot projects, in April 2018 Airbnb provided NGD with a $1 million loan pursuant to a convertible promissory note.  The principal and interest of that note would convert into equity securities in connection with, among other things, an equity financing of NGD.

17.     The parties' initial agreement was subsequently superseded and replaced by the contractual agreements summarized below.

18.     *The Collaboration Agreement.*  On January 2, 2019, the parties entered into a Collaboration Agreement (the "Collaboration Agreement").  Under this agreement, NGD committed to work with Airbnb to create specialized real estate properties suited to the Airbnb community.  Specifically, NGD committed to "open at least seven (7) Projects in each calendar year 2019 and 2020."  If it failed to do so, Airbnb could terminate the contract.  Collaboration Agreement § 7.3.  NGD also was required to work in good faith with Airbnb to implement Airbnb's feedback and designs and to seek Airbnb's written approval before publishing any marketing or promotional materials with Airbnb's name or mark.

19.     Section 10.4 of the Collaboration Agreement states that it is to be governed by California law, and Section 10.5 of the Collaboration Agreement provides as follows:

> Any legal action or proceeding arising out of or related to this Agreement, including any non- contractual claim, shall be brought exclusively in the federal or state courts located in San Francisco, California.  Each party hereby consents to the exclusive jurisdiction of such courts.  Each party hereby waives any venue or inconvenient forum defense to any claim filed and maintained in such courts and disclaims its right to initiate any action or proceeding arising out of or related to this Agreement in any other court or forum.

20.     *The Unit Purchase Agreement.*  On January 4, 2019, Airbnb and NGD entered into the Class A-1 Unit Purchase Agreement (the "Unit Purchase Agreement").  Under that contract, Airbnb purchased 3,407,785 Class A-1 Units in NGD, for a total of $11,042,408.26, including conversion of Airbnb's April 2018 promissory note.  The Unit Purchase Agreement explicitly prohibits the use of the proceeds for a distribution to any member.  Unit Purchase Agreement § 1.2.  The Unit Purchase

Agreement also includes representations and warranties from NGD that its statements about its capitalization were accurate.  *Id.* § 2.3.

21.     ***The Operating Agreement.***  Also on January 4, 2019, the parties entered an Amended and Restated Limited Liability Company Operating Agreement for NGD (the "Operating Agreement"). The Operating Agreement provides Airbnb with several rights, including "the right to receive, with reasonable promptness, such other information and financial data" concerning NGD as Airbnb reasonably requests.  Operating Agreement § 8.4.  Beyond this general inspection right, NGD also agreed to give Airbnb GAAP-compliant audited statements of income, changes in equity, cash flows, and audited consolidated balance sheets "as soon as available and in any event within [120] days after the end of each Fiscal Year."  *Id.* § 8.3.  And "as soon as available and in any event within thirty (30) days after the end of each fiscal quarter," NGD promised to give Airbnb those same documents in unaudited but still GAAP-compliant form.  *Id.*  Similarly, NGD agreed to give Airbnb a budget prepared for each month of the Fiscal Year "as soon as available, but in any event no less than [60] days following the first day of each Fiscal Year" of NGD.  *Id.*

22.     In addition, the Operating Agreement provides that a "Key Member," including Hernandez, defaults if he (a) "misapplies or misappropriates funds" of NGD, or (b) "commits any act of gross negligence, willful misconduct, bad faith or fraud in connection with or related to [NGD] or its duties or obligations hereunder or under any other agreement or contract with Airbnb."  *Id.* at 6–7.

23.     Last, the Operating Agreement states, "Any Officer may be removed as such, either with or without cause, by the Majority Members in their sole discretion at any time."  *Id.* § 6.5(c).  Section 6.5 of the agreement does not allow for Officers being removed in any ways other than (i) removal by Majority Members, (ii) the Officer's death, (iii) the Officer's resignation, or (iv) appointment of a successor to the Officer.  *Id.* § 6.5(b).  Under the contract, Airbnb's approval is required for the Majority Members to remove any Officer.

24.     ***The Additional Rights letter agreement.***  Also on January 4, 2019, Airbnb and NGD entered into an "Additional Rights" letter agreement.  Related to Airbnb's purchase of 3,407,785 Class A-1 Units in NGD, this agreement entitles Airbnb to additional information and management rights beyond those listed in the Operating Agreement.  *Id.* at 1.  For example, the Additional Rights letter

agreement states that Airbnb "shall be entitled to consult with and advise management of [NGD] on

significant business issues . . . ." *Id.* § 1. The Additional Rights letter agreement also requires NGD to

give Airbnb all reasonable information Airbnb requires to accommodate its financial reporting

requirements, including audited financial statements of NGD. *Id.* § 2.

**Airbnb Can Terminate the Collaboration Agreement**

25.     One of the key provisions in the Collaboration Agreement is that Airbnb has the right to

terminate the agreement if NGD failed to open at least seven projects in 2019. This section reads in

relevant part:

> Airbnb may terminate this Agreement and/or the applicable Project
> Agreement . . . notwithstanding anything to the contrary, as to each Project
> in Exhibit A, on no less than fifteen (15) days prior written notice if:
> (i) NGD fails to open at least seven (7) Projects in each calendar year 2019
> and 2020 . . . .

Collaboration Agreement § 7.3.[1]  The contract provides that "a Project is 'open' when it receives a

properly issued certificate of occupancy." *Id.* § 1.1.

26.     In 2019, NGD failed to open <u>any</u> Projects under the Collaboration Agreement.

**Hernandez Loaned His Other Company $1 Million, Violating Airbnb's Rights**

27.     On September 16, 2019, Hernandez informed Airbnb that Hernandez had "provide[d] a

bridge loan of $1,000,000 to the development entity for Natiivo / Miami (6th Street Partners LLC),

payback for this loan is expected in 30 days or less."  A true and correct copy of this email is attached to

this Complaint as **Exhibit A**.  In addition, Hernandez acknowledged in this email that he had an

obligation to provide notice of the loan to Airbnb pursuant to the Operating Agreement. *Id.*

28.     Airbnb neither received notice prior to this purported loan nor authorized it.  Upon

learning about this purported loan, Airbnb immediately asked Hernandez to (1) provide the loan

documentation, (2) describe the specific purpose of the loan and why NGD made it, and (3) explain

---

[1] "Project" means each real property listed in Exhibit A to the Collaboration Agreement.  Collaboration
Agreement at 1.  A "Project Agreement" is an agreement separate from the Collaboration Agreement
setting forth any additional terms subject to a "Project."

whether 6th Street Partners LLC is an NGD subsidiary, and, if so, to provide documentation of that relationship, or, if not, to describe 6th Street Partners LLC's ownership.

29.     Hernandez did not answer Airbnb's questions, instead claiming that NGD's general counsel was out of the office and would provide responses later.  Airbnb continued to press NGD and Hernandez for details about this purported loan.  In response, NGD and Hernandez responded with delays and vague non-answers.  NGD eventually provided Airbnb with a copy of an "unsecured promissory note" dated September 5, 2019, to justify the claimed loan.  A true and correct copy of the purported unsecured promissory note is attached to this Complaint as **Exhibit B**.  That note contains no information about the purpose of the loan.  That document states that the loan, plus interest, is due and payable by December 31, 2019.  Hernandez is listed as the signatory for both parties—lender and borrower—to the loan transaction.  The document also reflects that notices to either party to the transaction should be sent to the same person, Hernandez, at the same address, NGD's.  One or both of the electronic signatures on this document appear to have been affixed on or about November 2, 2019— almost two months <u>after</u> the date of the purported note and approximately six weeks <u>after</u> Airbnb began pressing Hernandez for details about this unauthorized loan and <u>after</u> Airbnb notified NGD that the apparent misuse of significant funds violated the parties' agreements.  On its face, the purported "loan" appears to show Hernandez simply diverting funds from an entity in which Airbnb has substantial interests and rights into one that Hernandez controls without oversight from Airbnb.  As far as Airbnb is aware, the $1 million "loan" remains outstanding and is in default.

30.     Hernandez's unauthorized loan violates the Operating Agreement, which states that because Hernandez is a "Key Member," he defaults under that contract if he (a) "misapplies or misappropriates funds" of NGD, or (b) "commits any act of gross negligence, willful misconduct, bad faith or fraud in connection with or related to [NGD] or its duties or obligations hereunder or under any other agreement or contract with Airbnb."  Operating Agreement at 6–7.

31.     Pursuant to its inspection and information rights under the Operating Agreement, Airbnb promptly and repeatedly over months demanded detailed information about the loan after learning of it.  NGD, via Hernandez, repeatedly and consistently deflected, refusing to provide even the most basic information about the loan, despite the fact that Hernandez signed as both borrower and lender.

32.     Hernandez's unauthorized loan also violates the Additional Rights letter agreement, which states that, unlike other members of the LLC, Airbnb is entitled to consult with and advise management of NGD—including Hernandez—on significant business issues.  A $1 million loan to another company affiliated with Hernandez is certainly significant.  The Additional Rights letter agreement also includes requirements that NGD furnish Airbnb with financial information upon request, yet NGD and Hernandez failed to honor that commitment despite repeated requests from Airbnb.

### NGD Misrepresented Its Capitalization to Airbnb

33.     Airbnb recently discovered that Hernandez's misrepresentations and lack of candor date back at least to the key agreements executed in January 2019.

34.     NGD misrepresented its capitalization in the Unit Purchase Agreement's representations and warranties.  That contract states that its disclosure schedule "sets forth the authorized and outstanding equity capitalization of [NGD] as of immediately following [the Unit Purchase Agreement's closing date]."  Unit Purchase Agreement § 2.3.1.

35.     In relevant part, the disclosure schedule states that another investor, Brookfield, possessed warrant purchase rights to specific percentages "of any single class of Units" issued by NGD following the date Airbnb invested under the Unit Purchase Agreement.  Based on this plain language, Brookfield's warrants could be exercised on a class basis, not a fully diluted basis.

36.     Contrary to this clear language that was the subject of lengthy negotiations prior to Airbnb's investment, Airbnb learned that NGD orally promised Brookfield that the warrants were exercisable on a fully diluted basis.  Airbnb discovered this fact when NGD sent it an amendment to the Operating Agreement that would have allowed Brookfield to exercise its warrants on a fully diluted basis, not a class basis.  NGD subsequently admitted that its agreement with Brookfield was indeed based on fully diluted capitalization.  Stunningly, NGD attempted to excuse this as "a scrivener's error."

37.     But this was no typo or minor drafting mistake—it changed the entire denominator of NGD's capitalization related to Brookfield's warrants.  It also had the effect of decreasing the dilution of Hernandez's units in NGD in relation to the financing, giving him greater voting control over the company and a larger stake in any future monetary distribution.  NGD misrepresented the facts of its capitalization to Airbnb in securing Airbnb's multi-million dollar investment.

**NGD Failed to Disclose Its Lawsuit with a Former Executive,
Whom NGD and Hernandez Impermissibly Removed from the LLC**

38.     Airbnb also has learned that a co-founder and officer of NGD, Cindy Diffenderfer, filed a series of lawsuits against Hernandez and NGD accusing Hernandez of diverting funds from NGD for his personal use and of diverting corporate opportunities from the company to himself.  *See* Complaint, *Diffenderfer v. NGD Homesharing, LLC*, No. 19-cv-23225 (S.D. Fla. Aug. 2, 2019); Complaint, *Diffenderfer v. NGD Homesharing, LLC*, No. 2019-010785-CA-01 (Fla. 11th Jud. Cir. Apr. 9, 2019). As with so many other aspects of their relationship with Airbnb, NGD and Hernandez were evasive about their live disputes with Diffenderfer, despite their obligations to disclose such disputes and to communicate candidly with Airbnb.  Instead, NGD and Hernandez attempted to conceal from Airbnb these lawsuits and Diffenderfer's termination from NGD.

39.     Diffenderfer filed a Declaration in one of those lawsuits alleging that Hernandez personally took "Acquisition Fees" and "Developer Fees" for the capital raised by NGD on real estate assets.  A true and correct copy of Ms. Diffenderfer's declaration is attached to this Complaint as **Exhibit C**.  In it, she claimed all of these fees belonged to NGD, the diversion of which excluded investors in NGD, including Airbnb, from benefiting from those funds.

40.     Diffenderfer also questioned Hernandez's stated $1.5 million capital contribution to NGD, and asserted that Hernandez caused NGD to pay a former associate to whom he owed money without disclosing that payment to investors, including Airbnb.  She alleged that Hernandez ordered her to remain silent about these events or face termination.

41.     Diffenderfer also alleged a number of troubling practices at NGD, including backdating documents and blaming material changes in foundational documents on a scrivener's error.

42.     Further, NGD and Hernandez's removal of Diffenderfer violates the Operating Agreement.  That contract states that Diffenderfer is an Officer of the LLC—Chief Marketing Officer, to be exact.  Operating Agreement § 6.5(b).  As an Officer, Diffenderfer cannot by removed except by the Majority Members, which must include Airbnb, unless she resigns, dies, or has been appointed a successor.  *Id.*  The Majority Members did not act to remove Diffenderfer.  NGD and Hernandez did so without notice or authorization.  Diffenderfer's removal was improper.

**NGD Failed to Collaborate in Good Faith with Airbnb**

43.     Pursuant to the Collaboration Agreement, NGD was required to "accept and implement Airbnb's reasonable feedback, suggestions and additions as to Development and each Project."[2] Collaboration Agreement § 1.1(c).

44.     NGD also had to "[a]dhere, and ensure that each Project adheres" to specific project guidelines Airbnb provided.  *Id.* § 1.1(e).  These guidelines required NGD to develop unique floor plans and layouts for its buildings' units, "such that the unit types are heterogeneous across the Project."  *Id.* Ex. B.  They also required "[a]pproved structural and design guidelines within buildings."  *Id.*

45.     The parties were to "discuss in good faith making one or more public announcements regarding their collaboration and each Project.  Any marketing or promotional materials using the name, logo or other property of a party may be used only with the prior written approval of that party."  *Id.* § 1.3(c).

46.     Airbnb worked tirelessly to get NGD to comply with its obligations.  Despite these efforts, NGD failed to perform and simply ignored Airbnb and its rights.  For example, NGD frequently disregarded or delayed implementing Airbnb's design input, which was crucial to fulfilling Airbnb's goal of providing its users with unique experiences.  NGD also repeatedly used Airbnb's name and branding without permission and made marketing and promotional statements for its Airbnb Projects without consulting with Airbnb.  *Id.* at 2.

## FIRST CAUSE OF ACTION
### FRAUD and DECEIT (CAL. CIV. CODE § 1709)

47.     Airbnb incorporates by reference paragraphs 1–46.

48.     NGD and Hernandez made or were responsible for the making of statements to Airbnb that were knowingly and intentionally false, incorrect and/or misleading, and/or which omitted information necessary to make such statements true, accurate, and complete.  NGD and Hernandez, by their conduct and actions, led Airbnb to believe that its $11 million investment would be protected from dilution when another investor exercises its warrants.  NGD and Hernandez, by their conduct and

---

[2] "Development" refers to NGD's obligation to plan, design, develop, and construct Projects.

actions, also led Airbnb to believe that its $11 million investment would contribute to NGD's working capital, not to another one of Hernandez's companies.

49. Airbnb now has learned that NGD and Hernandez's representations were false. NGD and Hernandez knew the representations were false when they made them, or they made the representations recklessly and without regard for the truth. In truth, Airbnb's investment was not protected from dilution, and NGD and Hernandez diverted at least $1 million from NGD to another one of his companies, all contrary to the representations made to Airbnb by NGD and Hernandez.

50. NGD and Hernandez intended that Airbnb rely on their representations. Airbnb reasonably relied on the false, incorrect and/or misleading statements, and acted or refrained from acting based on such reasonable reliance. Had true, correct, accurate, and complete statements been made by NGD and Hernandez, Airbnb would not have entered into the same agreements with NGD.

51. As a direct and proximate result of NGD and Hernandez's fraudulent statements and omissions and Airbnb's reasonable reliance, Airbnb has suffered substantial monetary damages at least to the extent of its $11 million investment.

**SECOND CAUSE OF ACTION**
NEGLIGENT MISREPRESENTATION

52. Airbnb incorporates by reference paragraphs 1–46.

53. NGD and Hernandez negligently and without due care made statements, and negligently and without due care acted and led Airbnb to believe that certain statements were true, when NGD and Hernandez knew, or were negligent in not knowing, that such statements were not true. NGD and Hernandez, by their conduct and actions, led Airbnb to believe that its $11 million investment would be protected from dilution when another investor exercises its warrants. NGD and Hernandez, by their conduct and actions, also led Airbnb to believe that its $11 million investment would contribute to NGD's working capital, not to another one of Hernandez's companies.

54. Airbnb now has learned that NGD and Hernandez's representations were false. NGD and Hernandez knew the representations were false when they made them, or they made the representations recklessly and without regard for the truth. In truth, Airbnb's investment was not protected from

dilution, and NGD and Hernandez diverted at least $1 million from NGD to another one of his companies, all contrary to the representations made to Airbnb by NGD and Hernandez.

55.     Airbnb reasonably relied on the false, incorrect and/or misleading statements, and acted or refrained from acting based on such reasonable reliance.  Had true, correct, accurate, and complete statements been made by NGD and Hernandez, Airbnb would not have entered into the same agreements with NGD.

56.     As a direct and proximate result of NGD and Hernandez's untrue statements and omissions and Airbnb's reasonable reliance, Airbnb has suffered substantial monetary damages at least to the extent of its $11 million investment.

### THIRD CAUSE OF ACTION
CAL. CORP. CODE §§ 25400 AND 25500

57.     Airbnb incorporates by reference paragraphs 1–46.

58.     NGD and Hernandez made or were responsible for the making of statements to Airbnb that were knowingly and intentionally false, incorrect and/or misleading during a securities offering to induce Airbnb to purchase such securities.

59.     NGD and Hernandez knew or had reasonable ground to believe that the statements were false or misleading.

60.     Airbnb reasonably relied on the false, incorrect and/or misleading statements, and acted or refrained from acting based on such reasonable reliance.  Had true, correct, accurate, and complete statements been made by NGD and Hernandez, Airbnb would not have entered into the same agreements with NGD.

61.     As a direct and proximate result of NGD and Hernandez's untrue statements and omissions and Airbnb's reasonable reliance, Airbnb has suffered substantial monetary damages at least to the extent of its $11 million investment.

### FOURTH CAUSE OF ACTION
CONVERSION

62.     Airbnb incorporates by reference paragraphs 1–46.

63.     Airbnb has a property interest in its $11 million investment in NGD.

64.     NGD and Hernandez substantially interfered with Airbnb's property interest by knowingly or intentionally issuing a $1 million loan to another of Hernandez's affiliated companies.

65.     Airbnb neither received prior notice nor consented to the loan.

66.     NGD's and Hernandez's actions have harmed Airbnb by depleting some of the money it has invested in NGD.

**FIFTH CAUSE OF ACTION**
BREACH OF FIDUCIARY DUTY

67.     Airbnb incorporates by reference paragraphs 1–46.

68.     Hernandez owed a fiduciary duty to Airbnb as a business partner and as the manager of NGD, a limited liability company.  Hernandez acted on behalf of Airbnb for purposes of managing NGD.

69.     Hernandez failed to act as a reasonably careful business partner and manager would have acted under the same or similar circumstances because Hernandez appropriated company property for his own use.

70.     Hernandez's actions have harmed Airbnb by depleting some of the money it has invested in NGD.

**SIXTH CAUSE OF ACTION**
BREACH OF CONTRACT

71.     Airbnb incorporates by reference paragraphs 1–46.

72.     Airbnb and NGD entered into the Collaboration Agreement, the Unit Purchase Agreement, the Operating Agreement, and the Additional Rights letter agreement.

73.     Airbnb performed its obligations under the contracts.

74.     NGD materially breached the Collaboration Agreement by failing to open seven properties in 2019 and by failing to fulfill the requirements as to properties it developed.

75.     NGD also materially breached the Unit Purchase Agreement, the Operating Agreement, and the Additional Rights letter agreement by misappropriating company funds and interfering with Airbnb's ability to receive financial information about NGD's and Hernandez's actions.  Additionally,

NGD materially breached the Operating Agreement by impermissibly removing Ms. Diffenderfer as Chief Marketing Officer.

76.     NGD's actions have harmed Airbnb not only to the extent of Airbnb's investment, but also in the amount of reasonably expected revenue from the collaboration.

## SEVENTH CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

77.     Airbnb incorporates by reference paragraphs 1–46.

78.     Airbnb and NGD entered into the Collaboration Agreement, the Unit Purchase Agreement, the Operating Agreement, and the Additional Rights letter agreement.

79.     Airbnb performed its obligations under the contracts.

80.     NGD unfairly and unreasonably interfered with Airbnb's right to receive the benefits of the Collaboration Agreement by failing to open seven properties in 2019 and by failing to fulfill the requirements as to properties it developed.

81.     NGD unfairly and unreasonably interfered with Airbnb's right to receive the benefits of the Unit Purchase Agreement, the Operating Agreement and the Additional Rights letter agreement by misappropriating company funds and interfering with Airbnb's ability to receive financial information about NGD's and Hernandez's actions.  As to the Operating Agreement, NGD also unfairly and unreasonably interfered with Airbnb's right to receive the benefits of that contract by impermissibly removing Ms. Diffenderfer as Chief Marketing Officer.

82.     NGD's actions have harmed Airbnb not only to the extent of Airbnb's investment, but also in the amount of reasonably expected revenue from the collaboration.

## EIGHTH CAUSE OF ACTION
### UNJUST ENRICHMENT

83.     Airbnb incorporates by reference paragraphs 1–46.

84.     As described above, Airbnb invested approximately $11 million in NGD with the understanding that the investment was made subject to NGD's representations to Airbnb about its capitalization, and that Airbnb's money would be used to fulfill the purposes of the parties' agreements and business relationship.

85.     By diverting $1 million from NGD to another one of his real estate companies, by misrepresenting the circumstances relevant to Airbnb's investment (including NGD's capitalization), and by failing to fulfill all obligations arising from the parties' agreements and business relationship, NGD and Hernandez have unjustly retained Airbnb's money to Airbnb's detriment.

86.     Under these circumstances, it would be unjust to allow NGD to retain the approximately $11 million Airbnb invested in NGD.

### NINTH CAUSE OF ACTION
CAL. BUS. & PROF. CODE § 17200

87.     Airbnb incorporates by reference paragraphs 1–46.

88.     California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business practice.  Specifically, the "unlawful" prong makes violations of other laws independently actionable.

89.     NGD's misrepresentations of its capitalization during a securities offering violates Cal. Corp. Code §§ 25400 and 25500, which prohibit material misrepresentations and failures to disclose material facts in connection with sales of securities.  Therefore, NGD's misrepresentations also violate the UCL.

90.     The violations of law described above serve as unlawful predicate acts and practices under the UCL.  As a direct and proximate result of NGD's unlawful acts and practices, Airbnb has suffered economic injury, including the loss of money invested in NGD.

91.     Airbnb is entitled to recover the money it has invested in NGD under the UCL's restitution provision.

### TENTH CAUSE OF ACTION
DECLARATORY RELIEF

92.     Airbnb incorporates by reference paragraphs 1–46.

93.     The Collaboration Agreement states that Airbnb may terminate that contract based on NGD's material breach or if "NGD fails to open at least seven (7) Projects in each calendar year 2019 and 2020 . . . ."

94.     NGD did not open any Projects in 2019.  Airbnb may terminate the Agreement.

95.     NGD also materially breached the Collaboration Agreement by failing to fulfill the contract's requirements as to the properties it developed.  Fulfilling those requirements is one of the Collaboration Agreement's fundamental purposes.

96.     An actual controversy has arisen and exists between Airbnb and NGD.  Airbnb contends that NGD's actions permit Airbnb to terminate the Collaboration Agreement.  NGD disagrees that the contract operates in this way, and has claimed that Airbnb's terminating the Collaboration Agreement could violate NGD's rights.

97.     A judicial determination of these issues and of Airbnb and NGD's respective rights and duties is necessary and appropriate because NGD contests Airbnb's interpretation of the parties' Collaboration Agreement.

## RELIEF SOUGHT

Airbnb requests an Order and entry of judgment against NGD and Hernandez:

98.     Awarding restitution to Airbnb in the amount of its investment;

99.     Awarding punitive damages to Airbnb;

100.    Awarding damages to Airbnb according to proof;

101.    Awarding interest at the maximum legal rate;

102.    Declaring that Airbnb may terminate the Collaboration Agreement;

103.    Declaring that NGD has breached the Collaboration Agreement, the Unit Purchase Agreement, the Operating Agreement, the Additional Rights letter agreement, and the implied covenant of good faith and fair dealing;

104.    Declaring that NGD has breached its fiduciary duty to Airbnb;

105.    Awarding Airbnb its reasonable attorneys' fees, costs, and expenses in this action; and

106.    Granting such other and further relief as the Court deems proper and just.

## DEMAND FOR JURY TRIAL

Airbnb demands trial by jury as to all issues so triable.

Dated:  January 23, 2020                              Respectfully submitted,

COVINGTON & BURLING LLP
W. Douglas Sprague
Ethan Forrest
Annie Shi

BUCKNER + MILES
David Buckner


By:   */s/ W. Douglas Sprague*
          W. Douglas Sprague

Attorneys for Plaintiff
AIRBNB, INC.